IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
GALVESTON DIVISION

| | | |
|---|---|---|
| JOHN BILLINGS and all other similarly situated individuals within the United States, | § § § | |
| | § | |
| Plaintiffs, | § | |
| | § | |
| v. | § | CIVIL ACTION NO. G-05-112 |
| | § | |
| ROLLING FRITO-LAY SALES, LP and FRITO-LAY, INC., | § § | |
| | § | |
| Defendants. | § | |

## ORDER GRANTING DEFENDANTS' MOTION FOR SUMMARY JUDGMENT

Plaintiff John Billings ("Plaintiff"), on behalf of all other similarly situated individuals, alleges that Defendants Rolling Frito-Lay Sales, LP ("Rolling") and Frito-Lay Inc. ("Frito-Lay") (collectively "Defendants") unlawfully failed to pay Plaintiff overtime wages for time worked over forty hours per week.  Now before the Court comes Defendants' Motion for Summary Judgment.  For the reasons stated below, the Motion is hereby **GRANTED**, and Plaintiff's claims against Defendants are **DISMISSED WITH PREJUDICE**.

## I. Background

Plaintiff is a Route Sales Representative ("RSR") employed by Rolling.[1]  As an RSR, Plaintiff delivers snack foods manufactured by Frito-Lay from a Frito-Lay owned distribution center ("DC")

---

[1]Rolling is a limited partnership with Frito-Lay as its general partner.  Accordingly, all analysis of this case is equally relevant to both Defendants.

1

in Webster, Texas to local retailers.

Frito-lay manufactures its products in over forty facilities throughout the United States, Mexico, and Canada.   Products are shipped from the various manufacturing facilities to DCs throughout the country.  Depending on customer demand, products from any manufacturing facility can find their way to any DC.  Once products arrive at the DC, they are temporarily stored and may be repackaged.  By shipping products to DCs, Frito-Lay is able to combine various products on one truck to be delivered to retailers.

RSRs pick inventory up from the DCs, deliver them to customers, and return empty containers for reuse.  RSRs record their pick-ups and deliveries using a handheld electronic wand device.  The information collected is then transmitted to Frito-Lay's inventory control system.  The inventory control system uses sales history as transmitted by the wands to forecast a particular DC's product needs.  Once a DC receives its forecast, a Product Supply Lead adjusts the forecast up or down based on more specific knowledge of customer needs.  This specific knowledge is derived from local intelligence gleaned from RSRs.  For example, an RSR might learn that a retailer plans to run a special necessitating increased inventory of a particular product.

Since Frito-Lay products have relatively short shelf-lives, they do not stay in the DCs for long. In fact, storage time for a product at the Webster DC during the relevant time period was just over six days.

## II.  Legal Standard

Summary judgment is appropriate if no genuine issue of material fact exists and the moving party is entitled to judgment as a matter of law.  *See* Fed. R. Civ. P. 56(c); *see also Celotex Corp. v. Catrett*, 477 U.S. 317, 323, 106 S. Ct. 2548, 2552–53, 91 L. Ed. 2d 265 (1986).  The party moving

for summary judgment bears the initial burden of "informing the district court of the basis for its motion, and identifying those portions of [the record] which it believes demonstrate the absence of a genuine issue of material fact." *Celotex*, 477 U.S. at 323, 106 S. Ct. at 2553. The non-moving party must come forward with "specific facts showing there is a genuine issue for trial." Fed. R. Civ. P. 56(e). *See also Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586–87, 106 S. Ct. 1348, 1356, 89 L. Ed. 2d 538 (1986). The court must view all evidence in the light most favorable to the non-movant. *See, e.g.*, *Broussard v. Parish of Orleans*, 318 F.3d 644, 650 (5th Cir. 2003), *cert. denied*, 539 U.S. 915, 123 S. Ct. 2276, 156 L. Ed. 2d 130 (2003). If the evidence would permit a reasonable fact finder to find in favor of the non-moving party, summary judgment should not be granted. *See Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247–48, 106 S. Ct. 2505, 2510, 91 L. Ed. 2d 202 (1986).

The Fair Labor Standards Act ("FLSA") requires covered employers to pay overtime wages to certain employees who work more than 40 hours per week. *See* 29 U.S.C. § 207. However, the overtime requirement does not apply to "any employee with respect to whom the Secretary of Transportation has power to establish qualifications and maximum hours of service pursuant to the provisions of section 31502 of Title 49." *Id.* § 213(b)(1). This statutory exemption does not require that the Secretary of Transportation actually regulate the employee; the exemption requires only that the Secretary have the authority to do so. *See Southland Gas Co. v. Bayley*, 319 U.S. 44, 47–48, 63 S. Ct. 917, 919, 87 L. Ed. 1244 (1943). 49 U.S.C. § 31502 provides that "the Secretary of Transportation may prescribe requirements for the qualifications and maximum hours of service of employees . . . of a motor private carrier when needed to promote safety of operation". 49 U.S.C. § 31502(b)(2). A "motor private carrier" is

3

> "a person, other than a motor carrier, transporting property by motor vehicle when---
> (A) the transportation is as provided in section 13501 of this title;[2] (B) the person is
> the owner, lessee, or bailee of the property being transported; and (C) the property
> is being transported for sale, lease, rent, or bailment or to further a commercial
> enterprise."

49 U.S.C. § 13102(13).  The only relevant and disputed factor is whether Rolling engages in transportation described in section 13501, namely, interstate transportation.  If it does, Rolling is a motor private carrier, Billings is not entitled to overtime compensation, and there is no possible basis for him to recover under the alleged causes of action.

Exemptions to the FLSA are "narrowly construed against the employers seeking to assert them and their application is limited to those establishments plainly and unmistakably within their terms and spirit."  *Arnold v. Ben Kanowski, Inc.*, 361 U.S. 388, 392, 80 S. Ct. 453, 456, 4 L. Ed. 2d 393 (1960).  The employer bears the burden of proving the applicability of FLSA exemptions.  *See Singer v. City of Waco*, 324 F.3d 813, 820 (5th Cir. 2003).

As noted above, the scope of the motor carrier exemption corresponds to the Secretary of Transportation's authority to regulate certain employees.  *See* 29 U.S.C. § 213(b)(1).  The Secretary has jurisdiction

> over transportation by motor carrier and the procurement of that transportation, to the
> extent that passengers, property, or both, are transported by motor carrier
> > (1) between a place in
> > > (A) a State and a place in another state
> > > (B) a State and a place in the same State through another state . . . .

49 U.S.C. § 13501.  The Secretary's jurisdiction extends to transportation that "is a practical continuity of movement from the manufacturers or suppliers without the state, through [the carrier's]

---

[2] Among other forms of transportation, section 13501 specifies transportation "between a place in . . . a State and another State."  49 U.S.C. §13501(1)(A).

warehouse and on to customers whose prior orders or contracts are being filled." *Walling*, 317 U.S. at 569, 63 S. Ct. 336.

> "The characterization of transportation between two points within a single state as interstate or intrastate depends on the essential character of the shipment involved. The crucial factor in determining the essential character of a shipment is 'the shipper's fixed and persisting intent at the time of shipment.' Whether the shipper has the requisite intent to move goods in interstate commerce depends on the totality of the facts and circumstances of each case."

*Central Freight Lines v. I.C.C.*, 899 F.2d 413, 419-20 (5th Cir. 1990) (quoting *Texas v. United States*, 866 F.2d 1546, 1556 (5th Cir. 1989)). In *Bilyou v. Dutchess Beer Distributors*, the Second Circuit held that the carriage of goods between two points in the same state was "part of the interstate movement of goods" if the carriage was "merely one leg of a route to an out-of-state destination." 300 F.3d 217, 224 (2d Cir. 2002). Whether the motor private carrier exemption applies thus depends on the character of the transportation involved, not the character of the commerce of which the transportation forms a part.

## III.  Analysis

Defendants argue that Plaintiff (along with other RSRs) engages in interstate transportation because (1) he transports products that were manufactured out of state from the DC to retailers, and (2) he transports empty containers from the retailers to the DC that are later shipped out of state. Plaintiff argues that the RSRs do not continue shipments that originate out of state, but that the shipment from the DC to the retailers is an entirely new shipment wholly within the state.

Plaintiff essentially argues that deliveries from the DCs to retailers are not part of a continuous movement because the shipments from the manufacturing facilities to the DCs are based on the projected demands of the DCs, not the individual retailers. In support of this argument, Plaintiff cites

5

*Baird v. Wagoner Transportation Co.*, 425 F.2d 407 (6th Cir. 1970).  The distribution scheme in

*Baird* is indeed similar to that employed by Frito-Lay.  *See id.* at 410-11.  However, the test employed

by the Sixth Circuit in *Baird* has been expressly called into question by the Department of

Transportation, the Department of Labor, and at least three Circuit Courts.  *See Central Freight Lines*

*v.* I.C.C., 899 F.2d 413 (5th Cir. 1990); *California Trucking Ass'n v. I.C.C.*, 900 F.2d 208 (9th Cir.

1990); *Roberts v. Levine*, 921 F.2d 804 (8th Cir. 1990); Opinion Letter–Fair Labor Standards Act,

2005 WL 330602 (Dep't of Labor Jan. 11, 2005); Motor Carrier Interstate Transportation–From Out-

of-State Through Warehouses to Points in Same State, 56 Fed. Reg. 19,812 (May 8, 1992).

The current and accepted "totality of the circumstances" test is best summarized in the

Department of Transportation's Policy Statement of 1992.  *See id.*  The Policy Statement lays out the

following indicia of the "fixed and persisting intent" that is necessary for a determination that a trip

from a warehouse to end user is merely the final leg of an interstate journey.  *See id.*

> 1.  Although the shipper does not know in advance the ultimate destination of specific shipments, it bases its determination of the total volume shipped through the warehouse on projections of customer demand that have some factual basis, rather than a mere plan to solicit future sales within the State.  The factual basis for projecting customer demand may include, but is not limited to, historic sales in the State, actual present orders, relevant market surveys of need.

> 2.  No processing or substantial product modification of substance occurs at the warehouse or distribution center.  However, repackaging (secondary packaging) may be performed.

> 3.  While in the warehouse, the merchandise is subject to the shipper's control and direction as to the subsequent transportation.

> 4.  Modern systems allow tracking and documentation of most, if not all, of the shipments coming in and going out of the warehouse or distribution center.

> 5.  The shipper or consignee must bear the ultimate payment for transportation charges even if the warehouse or distribution center directly pays the transportation charges

to the carrier.

6. The warehouse utilized is owned by the shipper.

7. "The shipments move through the warehouse pursuant to a storage in transit tariff provision."

*Id.*

As is apparent from the factual background laid out above, the delivery methods utilized by Frito-Lay and Rolling meet all but one of these criteria. Even so, Plaintiff contends that the shipping documents originating from Frito-Lay list the Webster DC as the final destination, so the intent of the shipper was for the journey to end in Webster. As evidence for this argument, Plaintiff notes that the bills of lading do not indicate that the goods shipped to the Webster facility are for "storage in transit." While a notation that goods are meant for "storage in transit" can be evidence of interstate intent, an absence thereof does not necessarily indicate an intent to the contrary. *See Roberts* 921 F.2d 804; Opinion Letter–Fair Labor Standards Act, 2005 WL 330602 (Dep't of Labor Jan. 11, 2005); Motor Carrier Interstate Transportation–From Out-of-State Through Warehouses to Points in Same State, 56 Fed. Reg. 19,812 (May 8, 1992).

Relying on deposition testimony, Plaintiff alleges that "Frito Lay's manager over the Webster distribution center does not consider the local route drivers to be part of the same interstate delivery that the long haul drivers perform in bringing the goods to the Webster warehouse." The portions of the deposition cited do not even address the shipper's intent, but rather characterize the parameters of shipment. This is not evidence of the intent of the shipper, and even if it were, it would not be enough to characterize the RSR's work as intrastate.

Plaintiff's final support for his argument is that the ultimate destination of the goods is

determined by the RSR's.  This argument is both unpersuasive and a stretch of the facts as they have

been presented to the Court.  While the RSR's may have discretion when it comes to specific product

delivery, they are granted that discretion by their employers and such discretion can be taken away

at any time.  This discretion is motivated by Frito-Lay's goal of maximizing profit.  If an RSR can

convince a retailer to accept more product, it is in Frito-Lay's best interest for the RSR's to have that

flexibility.   Additionally, the discretion of the RSR's is built into Frito-Lay's inventory control

system.  This is not a case in which the RSR's are independent contractors who purchase the product

from Frito-Lay for resale to retailers.  Frito-Lay and its affiliated companies retain control over the

product for its entire journey.[3]

## IV.  Conclusion

All of the factors commonly considered by Courts and administrative bodies weigh in favor

of a determination that Plaintiff and other RSRs were a part of interstate commerce even though their

legs of the journey were entirely intrastate.  Accordingly, the motor carrier exception to the FLSA's

overtime requirements is applicable to this case.  Plaintiff is not entitled to overtime compensation,

and has no claim for such compensation against either Defendant.  Accordingly, Defendants' Motion

for  Summary  Judgment  is  **GRANTED,**  and  Plaintiff's  claims  are  **DISMISSED  WITH**

**PREJUDICE**.  A Final Order will be entered contemporaneously with this Order.  All Parties are

to bear their own costs, expenses, and attorneys' fees incurred herein to date.[4]

---

[3]The Parties also submitted briefing regarding container transportation and applicability of the statute of limitations.  While the Court has analyzed all briefing, only the issues discussed in this Order are necessary for the disposition of this case.

[4]The Court apprehends that Billings and his fellow RSRs are hardworking employees who will no doubt be disappointed by this ruling.  While this Court is genuinely interested in providing andequate and fair compensation for Americans working to make an honest wage, it is

**IT IS SO ORDERED**.

**DONE** this 31st day of January, 2006, at Galveston, Texas.

_____
Samuel B. Kent
United States District Judge

---

constrained by the law as promulgated by Congress and interpreted by higher Courts.  Those laws require the ruling as outlined in this Order.